STATE OF MAINE *vs.* ROBERT BAITLER.

Kennebec.        Opinion July 21, 1932.

*H. C. Marden,* County Attorney, for State.
*Louis J. Brann,*
*Peter A. Isaacson,* for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J.   This case was reported on an agreed statement of facts. The complaint charges, and the respondent denies, by his plea of not guilty, that he permitted gambling in a place under his control. R. S., Chap. 136, Sec. 1. The determinative question is whether an automatic vending machine that he had in his restaurant, where patrons used it, was also a device producing things of value, by chance. R. S., Chap. 136, Sec. 18.

In return for a nickel, the machine delivered, with certainty, to every customer, a package of candy mints, of equivalent retail value. At the same time, and by the same operation, metal tokens or checks became available to purchasers of the mints — not to all alike, but in varying number, from two to twenty — in accordance with the functioning of the contrivance.

These tokens had no monetary or commercial value. They were designed to be played back into the machine, one by one.

Putting back the tokens did not cause the vending, or delivering of merchandise.

On the top of the machine, in an inclosed frame, bearing the legend "Play Ball," were three reels. When a token was inserted, the reels started to spin, thus beginning the playing of an imaginary, or (to use the expression of the agreed statement), symbolic game of baseball. The element of skill on the operator's part was, seemingly, a factor, but the mechanics of the device itself was controlling.

In a broad sense, the player operated the reels; that is, he could stop them, as their respective combinations were presented to view; and thereby make a desired play in the game; he could start the reels again, if he had tokens. The number of plays was dependent upon the number of tokens. The player began, as has already been said, with not less than two nor more than twenty. At uncertain intervals during the game, the machine dropped additional tokens, in uncertain numbers. A token permitted a play; another token,

another play. The play could go on only to the extent that tokens were dispensed and returned.

The tokens were things of value. They evidenced right to operate the "amusement." Each was a ticket to part of the game. "A thing of value to be the subject of gaming may be anything affording the necessary lure to indulge the gambling instinct." *Painter* v. *State* (Tenn., 1932), 45 S. W. (2d), 46.

There was, as hereinbefore stated, lack of uniformity in the number of tokens delivered. Some customers got more than others; some less. Tokens sufficient to play the game to a finish might be received; or might not. The same player could operate the machine, over and over again, with unlike results. The element of chance was always present. The allurement of something for nothing was attendant.

The use to which the machine was put classes it in the category of a gambling device. The following cases are in point, or analogous: *Painter* v. *State*, supra; *Rankin* v. *Mills Novelty Co.*, 32 S. W. (2d), 161 (Ark., 1930); *Snyder* v. *City of Alliance*, 179 N. E., 426 (Ohio App., 1931); *Harvie* v. *Heise*, 148 S. E., 66 (S. C., 1929); *State* v. *Marvin*, 233 N. W., 486 (Iowa, 1930); *State* v. *Mint Vending Machine Co.*, 154 Atl., 224 (N. H., 1931); *Gaither* v. *Cate*, 144 Atl., 239 (Md., 1929); *Green* v. *Hart*, 41 Fed. (2d), 855; *Jenner* v. *State*, 160 S. E., 115 (Ga., 1931); *Chambers* v. *Bachtel*, 55 Fed. (2d), 851; *Colbert* v. *Superior Confection Co.*, 6 Pac. (2d), 791 (Okl., 1931); *Lang* v. *Merwin*, 99 Me., 486; *State* v. *Googin*, 117 Me., 102. See, too, 12 R. C. L., 730; 27 Corpus Juris, 989; Note to *State* v. *Gambling Instruments*, 38 A. L. R., 73.

The respondent violated the statute when he allowed people to play the machine. He is adjudged guilty of the commission of the offense charged in the complaint.

> *Judgment for the State.*
> *Case remanded for sentence.*