*District Court of Northern Norfolk*
*Southern District*

No. 52474

## FIRST FINANCE CORP. OF MATTAPAN,
### Plaintiff

v.

## JOHN R. & EVELYN HARRIGAN,
### Defendants
### and
## NORFOLK COUNTY TRUST CO.,
### Trustee.

*Present:*   Nash, P.J. Murphy, J.

Case tried to *Cox, J.* in the District Court of Northern Norfolk, No. 52474

Murphy, J.   This is an action of contract in which the plaintiff seeks to recover the sum of

$1,157.29 plus interest under the conditional sales contract of a colored television set. The plaintiff is a holder for value of said contract having purchased it from the Universal Industries, Inc., one of the original parties to the contract. The plaintiff's declaration names both John R. Harrigan and Evelyn Harrigan as party defendants. The defendants answered a general denial; that the contracts were illegal and void as against public policy and were in violation of the General Laws of Massachusetts; and that there was fraud in the indictment and execution of the contract.

The judge found generally for the plaintiff in the sum of $1,157.29 with interest from the date of the writ and made certain special findings as follows: "This is an action to recover from the defendants the balance due under a written contract of conditional sale. On or about August 19, 1964, the defendants signed a conditional sales contract to buy from Universal Industries, Inc. (Universal and Admiral color television set, including an outdoor antenna and a one-year service policy). The price of the set was $895. The finance charges were $295.35, payable in thirty-five consecutive monthly installments of $33.06 each, except the last which is $33.25. There is an acceleration clause. The total time price was $1,190.35.

On August 25, 1964 Universal assigned the contract to the plaintiff without recourse. Before the plaintiff bought the paper, its manager

called the male defendant, told him that the plaintiff intended to buy the contract, asked if the defendant had received the television set and if it was satisfactory, and went over the terms of the contract. The defendant, no stranger to conditional sales transactions, said he understood the contract terms, that he had received the set and that it was satisfactory. The plaintiff then purchased the contract and sent the defendants a payments book. On October 13, 1964, the defendants made the first and only payment of $33.06 to the plaintiff. In November, 1964, the male defendant promised the plaintiff's manager to resume monthly payments, but failed to do so. The set is still in the defendant's undisturbed possession.

The plaintiff paid Universal $895 for the assignment of the contract. The contract contained the following clause: "This contract may be assigned by seller (Universal) without notice to the purchaser (Harrigans) and when assigned shall be free from any defense, counterclaim or cross-complaint by purchaser". I find that before purchasing the contract, the plaintiff in fact notified the defendants of its intention to do so as hereinbefore established, that it was an assignee of the contract for value, in good faith and without notice of any claim or defense whatever. See G.L. c. 106, § 9-206 (I). (Secured Transactions)

The defendants claim that there has been a violation of G.L., c. 271, § 6A, which they con-

tend makes the conditional sales contract null and void and unenforceable against them by the plaintiff. G.L., c. 271, § 6A is, as follows:

> "Plans under which purchasers agree to obtain more purchasers; injunction; receivers. Whoever sets up or promotes a plan by which goods or anything of value is sold to a person for a consideration and upon the further consideration that the purchaser agrees to secure one or more persons to participate in the plan by respectively making a similar purchase or purchases and in turn agreeing to secure one or more persons likewise to join him in the said plan, each purchaser being given the right to secure money, credits, goods or something of value, depending upon the number of persons joining in the plan, shall be held to have setup and promoted a lottery, shall be punished as provided by Section 7. The Supreme Judicial Court shall have jurisdiction in equity upon a petition filed by the Attorney General to enjoin the further prosecution of any such plan and to appoint receivers to secure and distribute the assets received thereunder."

The Uniform Commercial Code, so far as applicable, provides that a holder in due course takes instruments free from all defenses of any party to the instrument with whom the holder (Mattapan) has not dealt except such—illegality of the transaction, as renders the obligation of the party a nullity. G.L., c. 106, §3-305 (II) (b).

The question must consequently be decided whether there was a violation of law which made the conditional sales contract a nullity, and

therefore unenforceable. The judge on this question found that the defendant Evelyn Harrigan and Universal signed a separate contract in writing which, however, was part and parcel of the conditional sale of the television set. Under this contract, the defendant was, on becoming the purchaser of the television set, to receive fifty dollars from Universal for any person obtained who should in turn buy a television set from Universal and in turn find other customers under a similar arrangement. The defendant was also to receive twenty-five dollars for finding an ordinary customer for a color television. There was no compulsion upon the defendants or others to procure such customers. The defendants were obliged in any event to make the payments due under the conditional sales contract. "I find the plaintiff had no knowledge of the promotional agreement. I hold that no violation of G.L., c. 271, § 6A has been shown, and that the defense of an illegal lottery is not available to the defendants against the plaintiff in any event, the plaintiff having had no knowledge of the promotional agreement. See: G.L., c. 137, § 3".

Finally, the court found that no fraud or deceit for which the plaintiff is in any way legally responsible was practiced upon the defendants.

The judge reported this case of his own volition deeming that there were important questions of law involved with all of his findings,

and including his action on all the requests for rulings. There was a stipulation that if the findings of the judge were right in law, judgment should be entered for the plaintiff in accordance with the decision, otherwise, such order should be entered by the Appellate Division as justice might require.

A judge's general and special findings import a finding of all the subsidiary facts and the drawing of all rational inferences essential to that conclusion. Such findings must be sustained unless plainly wrong. *Moss* v. *Old Colony Tr. Co.,* 246 Mass. 139-143, *Kennedy Brothers* v. *Bird,* 287 Mass. 477-484, *Griffin* v. *Rudnick,* 298 Mass. 82 and *Hall* v. *Creditors National Clearing House,* 289 Mass. 437.

The contract contained a clause ''This contract may be assigned by the seller (Universal) without notice to the purchaser and when assigned, shall be free from any defense, counterclaim, or cross complaint by the purchaser''. The defendant has argued extensively that such a clause without more, is against public policy and void. This may be so, but in the instant case, the contract was not assigned without notice, on the contrary, the plaintiff made every effort to ascertain that there were no defenses or defects in the existing contract by directly asking the male defendant concerning this. This is tantamount to a waiver as there was direct notice which negates the appli-

cation of this clause and renders it immaterial for the reasons hereinafter set forth.

■ The plaintiff was an assignee of the contract for value, in good faith and without notice of any claim or defect whatsoever. G.L., c. 106, §9-206(1)

■ The charge of fraud in the inducement of the contract cannot be sustained. The record discloses nothing to indicate that the defendants were induced to sign the conditional sales contract upon agreeing further to procure other customers, and that any payment for the customers procured would be offset or credited against the amount that they were obliged to pay on the original television set. True, upon the purchase of the television set, the female defendant was to be paid twenty-five and fifty dollars respectfully for any customers that she procured or who were sold a television set by the plaintiff through any efforts of hers. We see nothing fraudulent in this arrangement. It may have been an inducement in the narrow sense, but certainly cannot be construed as fraudulent. She (the female defendant) was not obligated to procure any customers at all. She could not be forced to do so, and her right to the television set and her obligation to make payments on it were in no way affected whether she did or did not make a sale or procure a customer. This would appear to be a separate arrangement on her part. The female defendant was given an opportunity to procure other cus-

tomers for the plaintiff for which she was to be paid, that's all.

The defendants further claim that there was a violation of G.L., c. 271, § 6A. And, therefore, the contract is null, void and unenforceable. This chapter and section certainly is not applicable to the male defendant, since he was not a party to the arrangement at all. He is obligated on the contract without question. The only question, therefore, is whether or not the female Defendant is entitled to the benefit of this statute and, therefore, not liable on the conditional sales contract. We think not.

The record is almost bare of any evidence sufficient to justify a finding that this was a lottery in the ordinary sense, that is, a scheme in which lots or chances are sold. The element of chance, which is the essence or basis of any lottery, is completely lacking here. *Commonwealth* v. *Rivers*, 323 Mass. 379.

We cannot conceive this arrangement to be a lottery as defined in this statute and we think the judge was right in so finding. See: *A. A. Murphy* v. *Taylor,* 383 P. 2nd 648 (Okla., 1963) and *Krehbiel* v. *State,* 378 P. 2nd 768-769 (Okla., 1963). The Oklahoma Statute is similar to our G.L. c. 271, §6A, and the court said in the Krehbiel case, "A selling plan whereby a seller grants to the purchaser the privilege of securing one or more persons to make a similar purchase for each of which additional sales the original purchaser receives a specified sum of

money, does not constitute a lottery under the statute cited''. We agree with this reasoning. As said before, there was no compulsion on the female Defendant to procure other customers, and none whatsoever on the male defendant. If she voluntarily did find other customers, she was to be paid for her services, otherwise not, but beyond that, we fail to see any relevancy between this arrangement and her obligation to make the payments under the conditional sales contract, and even if such an arrangement could be said to be relevant, the Plaintiff had no acknowledge of the so called promotional agreement. G.L. c. 137, § 3.

We have examined all of the other contentions raised by the defendants and find nothing to merit further discussion.

The defendant filed ten requests for rulings all of which became immaterial or were rendered inapplicable by the special findings of the judge.

*Judgment for the plaintiff should be entered in accordance with his decision.*

SAMUEL E. KAUFMAN, of Boston
   *for the Plaintiff*
JOSEPH W. MACDONALD, of Dorchester
   *for the Defendants*